EMILY A. CLARK, appellant,

*v.*

LUKE CLARK, respondent.

Equity will relieve from a contract entered into by a person under mistake of his legal right where the other party to the contract, perceiving the mistake, not only fails to apprise of it but is guilty of unfair and deceptive conduct which tends to confirm the mistake and conceal the truth and influence the entry into the contract under the mistake.

On appeal from a decree of the chancellor, who delivered the following opinion:

The complainant bases his claim to relief upon his ignorance that the defendant's demand was barred by the statute of limitations when the arbitration agreement was entered into, coupled with the fact that the defendant's attorney, while dealing with him, knew that circumstance, and not only failed to disclose it, but so unfairly dealt with him as to confirm him in his mistake and effect a concealment of the truth.

The principle invoked for the complainant's relief is well stated by Professor Pomeroy (*2 Pom. Eq. Jur.* §§ *847, 849*) in this language:

"Whatever be the effect of a mistake, pure and simple, there is no doubt that equitable relief, affirmative or defensive, will be granted when the ignorance or misapprehension of a party concerning the legal effect of a transaction in which he engages or concerning his own legal rights which are to be

Clark v. Clark.

affected is induced, procured, aided or accompanied by inequitable conduct of the other parties. It is not necessary that such inequitable conduct should be intentionally misleading, much less that it should be actual fraud; it is enough that the misconception of the law was the result of, or even aided or accompanied by, incorrect or misleading statements or acts of the other party. * * * The scope and limitations of this doctrine may be summed up in the proposition that a misapprehension of the law by one party of which the others are aware at the time of entering into the transaction, but which they do not rectify, is a sufficient ground for equitable relief. A court of equity will not permit one party to take advantage and enjoy the benefit of an ignorance or mistake of law by the other, which he knew and did not correct. * * * Whenever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract or personal *status*, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests or relations or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to if not identical with a mistake of fact."

And in *Haviland* v. *Willets, 141 N. Y. 35*, Mr. Justice Finch, declaring the same principle, said: "It is equally well settled that where there is a mistake of law on one side and either positive fraud on the other or inequitable, unfair and deceptive conduct, which tends to confirm the mistake and conceal the truth, it is the right and duty of equity to award relief. All the cases which deny a remedy for mere mistake of law on one side are careful to add the qualification that there must be no improper conduct on the other."

The complainant was seventy-six years old when he negotiated with Mr. Fisk. He was not a lawyer. His education had been a practical one at the Washington market in New York city. Whether or not his intellect was enfeebled by age at the time of his negotiation is a question not determinable from the variant *ex parte* affidavits upon which the case has been submitted. He dealt with a lawyer who was fully aware of the legal *status* of his client's claim; who knew that to an action brought by her the statute of limitations might be effectively pleaded and that therefore nothing could be had for her except through her father's bounty or through some advantage happening from ignorance of his legal defence. The letter by which Mr. Fisk first called the

complainant to his office did not expressly affirm a legal claim, but yet it was the letter of a law firm, engaged in the business of securing the legal enforcement of client's demands, which, after the first interview, imported to the complainant's mind that litigation would ensue upon his failure to acquiesce in and settle the demand. When he called upon the lawyer he was charged with having assaulted and seriously injured his daughter. Being ignorant that lapse of time had barred an action against him, if he chose to assert that bar, and failing to contemplate the possibility of his having a purely legal defence, in answer to the demand, he at once entered upon a discussion of the merits of the charge and denied that he had committed the assault alleged. Thus he betrayed to Mr. Fisk his ignorance of the legal defence. It is clear that Mr. Fisk was embarrassed by this discovery and shrank from taking advantage of it. He therefore sought to make the basis of the subsequent negotiation the duty of a parent to assist a daughter in helpless physical condition, without reference to the truth or enforcibility of the charge she made against him. Several interviews followed between the lawyer and the complainant, in which, at times, a son of the complainant participated, at all of which the subjects of discussion were either the truth of the allegation of assault or what bounty the father should give. Throughout these interviews, although Mr. Fisk did not, in direct words, assert that his client had a legal demand against the complainant, he assumed the attitude of one who demanded a legal and enforcible right and thereby left the complainant to imply that such a right exisited. This conduct is notably instanced by Mr. Fisk's remark, testified to by the complainant and not denied, that if the parties should go to court the jury would sympathize with the woman. It is apparent also, that the complainant shrank from the notoriety and scandal which a public contest with his daughter would occasion and hence begged that the matter might be kept private, and suggested that the differences should be submitted to the judgment of some third person. Under the fear of litigation and notoriety and because of the pressure of Mr. Fisk and his own son, the complainant made two offers, both of which

were rejected. Mr. Fisk saw that the complainant would not voluntary exceed the amounts of his rejected offers and doubtlessly thought that if the complainant should be apprised of the legal defence available to him, he would not adhere to either of those offers and therefore deemed it to be his duty to his client not to inform the complainant of his defence. To relieve himself of the responsibility of the situation he asked the complainant why he did not consult counsel and was answered that the services of a lawyer were not needed and that the complainant did not want to go to the expense of such employment. This answer clearly manifested the complainant's ignorance of his legal position and his entire misapprehension of Mr. Fisk's purpose in sending him to counsel. On the 23d of November, the negotiations having been fruitless in order to reach conclusions, Mr. Fisk proposed, as an *ultimatum*, that the complainant should do one of two things: either agree to pay the defendant a monthly sum or leave the questions in dispute to arbitrators. The complainant said that he would answer the proposition in a week, and then Mr. Fisk wrote a memorandum of his proposition indicating thereon that the matters in dispute were "claims" and "amount of damages to be paid." At this point the complainant's ignorance of his legal defence again embarrassed Mr. Fisk, and for a second time he advised the complainant to consult his lawyer, adding, however, as if to keep the complainant from attaching to that advice the significance that he needed a lawyer, these words, "or Mr. Nugent, or any one else in whom you have confidence." A week later the complainant expressed his willingness to arbitrate, and then Mr. Fisk wrote that the questions to be submitted were, whether the complainant had assaulted the defendant; whether the assault had resulted in injury to her, and what damages should be paid, and said to the complainant, "you understand that these questions and no others" are to be submitted, to which the complainant responded, betraying a continuance of his ignorance of his legal defence and giving evidence of apprehension of a scandalous litigation before a prejudiced jury, "I think that a family dispute like this should be kept private, and I would rather submit a question of this character

Clark *v.* Clark.

to three arbitrators than to an ordinary jury, who are apt to be prejudiced if a woman is a party."

After the arbitration agreement was prepared in duplicate and before its execution, it was read over by Mr. Fisk to the complainant, who, during the reading, held one of the copies. After the reading, question as to the *personnel* of the arbitrators arose, and the complainant said that he would select Mr. Collins, who had been his counsel, and thereupon Mr. Fisk remarked that he should think that the complainant would want Mr. Collins for his counsel and not as arbitrator, and then went with the complainant to see Mr. Collins, but they failed to find him, and another person was selected and the arbitration agreement was executed. It contains this clause : " Expressly waiving all statutory and technical questions in connection therewith," to bar the legal defence available to the complainant, and also an agreement that it might be made a rule of court by either party.

It is urged that the conduct of Mr. Fisk manifested a purpose upon his part that the complainant should believe that his daughter had a cause of action against him to which there was no legal defence, and that satisfactory evidence of that purpose is found, not only in the suggestion of Mr. Fisk that a jury would sympathize with a woman, predicating the appearance before a jury, but also in the general and indefinite terms in which the waiver of the complainant's right under the statute of limitations was couched, and in the admitted fact that while he took pains to explain in the effect of the provisions that the arbitration agreement might be made a rule of court, he failed to make any explanation of the obscure waiver. I am unwilling to give my assent to this proposition. I think that Mr. Fisk, realizing that the complainant was ignorant of the defence that was available to him and conscious that he was acting under the spur of what he conceived to be impending litigation, was perplexed between what he conceived to be his duty to his client and his anxiety to recover for her on the one hand, and an honorable shrinking from taking advantage of the ignorance and misapprehension of the man with whom he dealt on the other. He feared that if he enlightened the complainant, his client

would obtain little or nothing by way of bounty, and would reproach him with infidelity to her interest. His resolution was that it was not his duty to inform the complainant of his legal defence, but at the same time his sense of equity admonished him to at least afford the complainant ample opportunity to become informed of that defence. Actuated by the last conclusion he twice advised complainant to consult counsel and friends, and once went with him to find his counsel, before the agreement was executed, but he did not intimate to the complainant that it was necessary that he should be advised by counsel as to legal rights of which he was in ignorance.

It is suggested that the complainant, in entering into the agreement, was moved by the consideration that as a father he should deal justly with his child, without question whether there existed a legal obligation which the child could enforce. I do not think so. He clearly dealt under the spur of apprehended litigation and its attendant scandal and the sympathy it would engender against him, which, in view of the fact that the arbitrators have found that he did assault and injure his daughter, perhaps was quickened by conscious guilt. His object evidently was to avoid publicity and escape from his predicament at the least possible cost.

I think that the case must be resolved to this: Mr. Fisk, appreciating the power which the complainant's ignorance and apprehension gave him, without disclosing the truth, took from him an agreement, by which, in general and indefinite terms unexplained, and apt to leave him in his ignorance, an available legal defence was waived, and the complainant subjected himself to an award which otherwise would not have been had. Barring the somewhat indifferent attempts of Mr. Fisk to put him in the hands of counsel and thus afford him an opportunity to correct his mistake, the whole course of negotiation tended strongly to confirm the mistake and conceal the truth. It was a mistake on the part of Mr. Fisk to conclude that loyalty to his client prevented a disclosure to the complainant or at least a determined refusal to proceed with him to arbitration until he should be advised by competent counsel. The matter was between his

client and the complainant, one in which Mr. Fisk spoke and acted for his client, in which she became chargeable with the consequences of his acts and omissions, and it would not have been disloyal to her for him to have done that which in equity she should herself have done if she had been in Mr. Fisk's place. I think it would be inequitable to permit the advantage had to be retained, and I am therefore constrained to grant the relief sought.

*Mr. Willard C. Fisk*, for the appellant.

*Mr. Charles L. Corbin*, for the respondent.

PER CURIAM.

Decree affirmed, for the reasons given by the chancellor.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, LIPPINCOTT, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON—8.

*For reversal*—DIXON, GARRISON, NIXON—3.